# A. J. WICKSTRAND v. THE PURE OIL COMPANY.[1]

May 2, 1924.

No. 23,925.

**Findings sustained.**
1. The findings attacked are *held* supported by the evidence.

**Dismissal of garnishee not res judicata as to existence of debt.**
2. When a defendant in a garnishee proceeding moves for a dismissal thereof upon the ground, among others, that the debt disclosed is not due him unconditionally from the garnishee, he cannot claim the order of dismissal to be res adjudicata that the debt sought to be reached by his creditor did not belong to him.

**Execution levied during stay.**
3. The levy of an execution upon such a debt by such creditor after the dismissal of the garnishee proceeding was effective although made during the period of the stay provided in such order of dismissal.

**Decision sustained by findings of fact.**
4. The conclusion of law and judgment accord with the findings of fact.

[1] Reported in 198 N. W. 811.

Action in the district court for Hennepin county to recover $2,000 from the Manhattan Oil & Linseed Company. The Pure Oil Company filed a complaint in intervention for the same amount. The case was tried before Baldwin, J., who made findings and ordered judgment in favor of The Pure Oil Company. Intervener's motion for amended findings and conclusions was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*James C. Melville* and *E. E. Eder*, for appellant.
*Bartlett & Bartlett* and *George E. Dyer*, for respondent.

HOLT, J.

Plaintiff appeals from a judgment entered in favor of The Pure Oil Company, substituted as defendant in place of the original defendant, Manhattan Oil & Linseed Company.

Elmer Broms and Linda Broms are husband and wife. Plaintiff is the latter's brother. Early in 1921 Elmer obtained a contract for a deed to half a lot in Alexandria and later a lease of part of another lot. Upon this property he erected the ordinary filling station with tanks and equipment and established a gasolene and oil business. On December 17, 1921, the contract for deed was assigned by Elmer and wife to his father, John Broms, and on the same date by the latter assigned to Linda. There was no consideration unless the dollar recited in the instruments as such was actually passed back and forth, and of this John Broms was not certain. Thereafter, on May 31, 1922, Linda received the deed from the owner, which was recorded August 28, 1922.

In June, 1922, Elmer negotiated a sale of all the property and business, including the lease mentioned, to Manhattan Oil & Linseed Company for $12,500, payable in instalments. On October 31, 1922, The Pure Oil Company brought an action against Elmer to recover a balance due for goods sold and delivered in the business conducted by him between September 30, 1921, and May 5, 1922, and recovered a judgment, January 20, 1923, for $1,926.69. The execution issued thereon was levied upon $2,000 in the hands of the Manhattan Oil & Linseed Company. The latter has paid to

Elmer and Linda Broms all of the purchase price of the property named in the contract except this $2,000. Under order of court, made April 4, 1923, when The Pure Oil Company was substituted as defendant in place of the Manhattan Company, the sum mentioned was paid into the hands of E. E. Eder, who was appointed receiver to hold the same to abide the outcome of the action. On December 5, 1922, Linda and Elmer had entered a stipulation with the Manhattan Company under which the balance of the purchase price was paid them, except the $2,000 which the company was to retain in trust until the garnishee proceeding hereinafter referred to was disposed of. The next day Linda and Elmer gave plaintiff a written assignment of the $2,000 due from the Manhattan Company, and upon such assignment this action is predicated. It should also be said that in the action instituted by The Pure Oil Company against Elmer Broms, the Manhattan Oil & Linseed Company was, on November 13, 1922, garnisheed and upon the disclosure the garnishee was discharged. However, the execution was soon thereafter, on January 25, 1923, levied while the money was in the hands of the Manhattan Company.

The Pure Oil Company in its pleading attacked as in fraud of creditors of Elmer the transactions by which the title to this property sold to the Manhattan Company purported to have passed from Elmer to Linda prior to such sale, and likewise the pretended sale to plaintiff of the $2,000 part of the proceeds of said property. The court in substance found the charge true, and certain findings, necessary to support the conclusions of law, are challenged in the appeal as not supported.

The first finding attacked is to the effect that Elmer added $10,000 in value to the real estate bought and leased by the erection and installation of the filling station thereon; and that plaintiff has been repaid the $500 borrowed of him and Linda has been paid many times over the $1,300 or $1,800 which she contributed to the improvement, she having received out of the sum paid by the Manhattan Company for the property and business the sum of $4,759.50 in one lump sum. No other finding could be justified, insofar as the above facts are material. Elmer purchased the half lot for

$2,000. His efforts in building the filling station increased the value of the real estate in a very substantial amount, for it sold for $12,500. Linda was not a witness. Her husband testified that he had procured from her not to exceed $1,800. He admitted that the proceeds of a check of $4,759.50, which the Manhattan Company paid on the purchase price, was all received by her.

The finding that Elmer paid the entire consideration for the property and business sold to the Manhattan Company is assailed. Elmer, a hostile witness, admitted that he personally negotiated for the property, improved it, and started and conducted the business until it was sold. To be sure, he says that he advised with his wife; but that would be natural, and no indication that he was her agent. He transacted all the business with the purchaser, and manipulated the placing of the title in Linda's name previous to the transfer to the purchaser. It is said Linda furnished $5,000, the initial payment made by the Manhattan Company for the plant, to pay the debts incurred by Elmer in running the business, and acquiring the property. But if the property was in fact as to creditors of Elmer his, the $5,000 paid upon the purchase price was his and not hers.

The finding as to there being a sale in bulk of a stock of goods and merchandise without an attempt to comply with the statute relating to such sales (G. S. 1913, § 7018), is attacked as immaterial, not being within the issues. For the purposes of this appeal that may be conceded, but the decision of the court below must nevertheless stand if the two findings next referred to are supported.

The court found the $2,000 which the Manhattan Company had in its hands was the property of Elmer and subject to seizure under the execution issued upon the judgment of The Pure Oil Company against him. As we understand plaintiff, this finding is attacked on the ground that the order dismissing the garnishee, the Manhattan Company, is res adjudicata that the $2,000 did not belong to Elmer, and also on the ground that there was no lawful levy on this money, since, when the order of dismissal was made, there was a stay of 20 days granted and the levy of the execution was made before the stay expired. There is no merit in either point.

No finding whatever was made in the order of dismissal. One ground upon which it was asked was that there was nothing due unconditionally from the garnishee to Elmer when the garnishee summons was served on November 13, 1922. The disclosure revealed that nothing was due under the contract of purchase from the garnishee until November 27; that it was a joint contract of Elmer and his wife with the garnishee; and that it contained a provision for cancelation if default should occur. Under that situation it cannot well be urged that a mere dismissal of the garnishee adjudicated the ownership of these $2,000 seized by the execution. The stay was for the benefit of the defeated party, and was not meant to tie its hands from making use of appropriate remedies to enforce its judgment. Moreover, if the levy of the execution upon this money was contrary to a then operative restraining order of the court, it was nevertheless effective, for no move was made to vacate or set it aside.

Finally, it is claimed that the finding, to the effect that the pretended assignment of the $2,000, retained by the Manhattan Company out of the purchase price when The Pure Oil Company garnisheed and upon which plaintiff brought this suit, was not obtained in good faith or for a valuable consideration but for the purpose of delaying and defrauding the creditors of Elmer Broms, is not sustained by the evidence. In our opinion such finding is unavoidable upon this record. It is clear from Elmer's testimony that the property and business sold to the Manhattan Company was acquired by him and was his. The placing of the title to a part of it in the name of his wife, after he had begun to incur the indebtedness included in the judgment of The Pure Oil Company, must be considered as merely a futile effort to defraud and delay that company from enforcing its claim against him. That transaction was presumptively fraudulent, the wife being the recipient of the husband's title. Murphy v. Casey, 151 Minn. 480, 187 N. W. 416, and the prior case therein cited.

But concede, for the purposes of this decision only, that as against plaintiff The Pure Oil Company cannot question the transfer of Elmer's title to the half lot to Linda, and consequently

not her right to an interest in the proceeds from the sale to the Manhattan Company, still the findings above mentioned that the assignment to plaintiff was fraudulent as to The Pure Oil Company must be sustained. Plaintiff was Linda's brother. He admits he knew something of Elmer's situation, and that this $2,000 was tied up in litigation. He took the advice of Linda's attorney, and not that of his own attorney in buying this claim, and bought it the day after Linda and Elmer had entered a stipulation with the Manhattan Company under which all the purchase money had been turned over to them except this $2,000. Although plaintiff,. his sister and her husband and their attorney, lived in Minneapolis, and although plaintiff had had a deposit account with a bank there, he gave his sister a check of $1,800 upon a bank in Alexandria with which he had done no business.for some time, and then got a check of $300 from his sister and with $1,700 in cash he went to another bank in Minneapolis and procured a cashier's check of $2,000 and sent it to the Alexandria bank for deposit to meet the check given to his sister, meantime requesting her not to present it for payment until this could be done. His attempt to account for the $1,700 cash was painfully evasive and futile. Nor could he explain why he did not pay his sister direct when he had the money in his hand and she was present. His whole testimony is such that no trier of fact could regard the whole scheme of his purchase or assignment otherwise than made on purpose to circumvent the creditors of Elmer, and especially of The Pure Oil Company in collecting its claim against him.

Again, there is no basis whatever in this record for Linda claiming title to all of the proceeds of the sale to the Manhattan Company, even granting that she owned the half lot. It is obvious the business was not hers, but her husband's. The lease was in his name. The deed given to the Manhattan Company by Linda and Elmer recited a consideration of $6,000, and the bill of sale transferring the business and lease a consideration of $6,500. Linda had contributed to the venture at the most $1,800; she had received from the sale $4,729.50 in one check. This $2,000 was set aside to abide the result of the litigation and the claim of The Pure Oil Company.

When that was done by Linda and Elmer, it should be taken as an agreement between them that this was part of Elmer's share of the proceeds upon the joint sale for a lump sum of properties owned separately by them, so that in the event The Pure Oil Company's effort to enforce its claim against Elmer was successful it should be limited to this fund.

The evidence, in our opinion, amply justifies the findings assailed on this appeal. There can be no doubt that the conclusion of law and judgment accord with the findings of fact as made.

The judgment is affirmed.